## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



APPELLANT PRO SE

Kenneth W. Gibbs
Michigan City, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Frances Barrow
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Kenneth W. Gibbs,

*Appellant-Defendant,*

v.

State of Indiana, *et al.*,

*Appellee-Plaintiff*

March 24, 2015

Court of Appeals Case No.
22A01-1407-MI-320

Appeal from the Floyd Superior Court
Honorable Vicki L. Carmichael, Special Judge
Cause No. 22D01-1302-MI-001

**Friedlander, Judge.**

[1] Kenneth W. Gibbs appeals the denial of his petition for writ of habeas corpus, thereby challenging (1) the denial of his petition for writ of habeas corpus, (2) the revocation of his parole, (3) the calculation of credit time, (4) the failure to

rule on his motion for name change, (5) the failure to rule on his Petition for Nihil Dicit Judgment, and (6) the failure to rule on his Bill of Equity.

[2] We affirm.

[3] On March 12, 1984, Gibbs was sentenced to fifty years imprisonment following his conviction of attempted murder in Floyd County, Indiana. He was released to parole on July 2, 2006 and began serving parole in Kentucky. On June 18, 2007, a parole violation warrant was issued. The warrant was served upon Gibbs on June 27, 2007 and he waived extradition on July 11 of that year. On July 12, 2007, a parole revocation hearing was held in Kentucky, which was followed on September 7, 2007 by a parole revocation hearing in Indiana. Following the Indiana hearing, Gibbs's parole was revoked. At the time of the parole revocation hearing in Kentucky, Gibbs had 9632 days remaining on his sentence.

[4] On February 27, 2013, Gibbs filed a Petition for Writ of Habeas Corpus in Floyd Superior Court. At the time, Gibbs was incarcerated at the Miami Correctional Facility in Miami County, Indiana. On March 18, 2013, Gibbs filed an Affidavit of Fact Submitting Legal Notice Name Declaration, Correction Proclamation and Publication (Name Declaration Notice), which we will discuss in more detail below. On July 18, 2013, Gibbs filed a Petition for Nihil Dicit Judgment, and on August 26, 2013 Gibbs filed a Bill of Equity.

[5] On June 25, 2014 the trial court entered an order on the various pleadings filed by Gibbs. The court denied his writ of habeas corpus and affirmed the

revocation of his parole and the calculation of credit time. The court did not address Gibbs's Name Declaration Notice, nor did it rule on his Petition for Nihil Dicit Judgment or Bill of Equity.

1.

Gibbs challenges the denial of his petition for writ of habeas corpus. Pursuant to Ind. Code Ann. § 34-25.5-2-2(a)(1) (West, Westlaw current with legislation of the 2015 First Regular Session of the 119th General Assembly effective through February 23, 2015), a writ of habeas corpus may be granted by "the circuit or superior courts of the county in which the person applying for the writ may be restrained of his or her liberty, or by the judges of those courts[.]" Although Gibbs was convicted in Floyd Superior Court, he was incarcerated in Miami County at the Miami County Correctional Facility at the time he filed his petition. Therefore, Floyd Superior Court, indeed any Floyd County court, lacked jurisdiction to grant Gibbs's petition for writ of habeas corpus. Therefore the trial court did not err in denying the petition.

2.

Gibbs challenges the revocation of his parole, arguing that the revocation court did not conduct a preliminary hearing in a timely manner. Gibbs previously raised precisely the same issue before in this court. In a memorandum decision, this court rejected Gibbs's argument as follows:

> The issue of whether Gibbs–El's parole hearing was held in a timely manner as required by Indiana Code section 11–13–3–10 was

expressly determined by the Miami Circuit Court in its October 5, 2010 order. That court properly determined that his parole hearing, held on September 7, 2007, was held within sixty days of July 11, 2007, the date that Gibbs–El waived extradition. And there is nothing in the record before us that would lead us to conclude that Gibbs–El did not have a "full and fair opportunity to litigate the issue" in the prior Miami Circuit Court proceedings.

For these reasons, Gibbs–El is collaterally estopped from raising his claim that his parole should not have been revoked because of the alleged untimeliness of his parole revocation hearing. And his case was properly dismissed because his requests for monetary and injunctive relief arise solely from that claim. Finally, Gibbs–El's continued attempts to relitigate this issue are frivolous; therefore, the trial court did not err when it dismissed his case pursuant to Indiana Code chapter 34–58–1.

*Gibbs-El v. Hegewald*, No. 49A02–1107–CT–747, slip op at 2 (Ind. Ct. App. February 23, 2012), *trans. denied*. To the list of reasons that this argument is without merit (i.e., collateral estoppel, frivolousness), we add res judicata. "The doctrine of res judicata prevents the repetitious litigation of that which is essentially the same dispute." *Ben–Yisrayl v. State,* 738 N.E.2d 253, 258 (Ind. 2000), *cert. denied,* 534 U.S. 1164. If an issue was raised on direct appeal, but decided adversely, it is res judicata. *Williams v. State,* 808 N.E.2d 652 (Ind. 2004).

[8]     Gibbs's repetitious challenge to the revocation of his parole is therefore barred by the doctrine of res judicata. *See Maxey v. State,* 596 N.E.2d 908, 911 (Ind. Ct. App. 1992) ("[i]t is imperative to an orderly judicial system that, at some point, controversies end").

3.

Gibbs contends the trial court erred in rejecting his claim that his credit time was calculated incorrectly. In Indiana, a prisoner is placed into a "class" for the purpose of earning credit time. It is undisputed that Gibbs was classified in Class I. Inmates in Class I earn one day of credit time for every day imprisoned. Ind. Code Ann. § 35–50–6–3 (West, Westlaw current with legislation of the 2015 First Regular Session of the 119th General Assembly effective through February 23, 2015).

Gibbs's original executed sentence was 50 years, or 18,262 days. He was released with good-time credit after 25 years and placed on parole. Gibbs seems to argue that after having earned credit time during the twenty-five-year incarceration on his original sentence, he could not be ordered back to prison to serve all or part of the remainder of his original sentence after his parole was revoked. In effect, he contends that ordering him to serve the remainder of his original sentence would deprive him of his earned credit time. This court has rejected this construction of the meaning of I.C. § 35-50-6-1 (West, Westlaw current with legislation of the 2015 First Regular Session of the 119th General Assembly effective through February 23, 2015) in *Harris v. State*, 836 N.E.2d 267 (Ind. Ct. App. 2005), *trans. denied*.

In *Harris*, the defendant, after earning good-time credit of approximately six and one-half years, was paroled after serving three and one-half years of his ten-year sentence based upon having earned good-time credit. He subsequently was found to have violated the conditions of parole, and parole was revoked and the remainder of the original sentence reinstated. Harris argued that in so doing, the trial court

deprived him of the credit time he had earned prior to his release on parole. We rejected this argument, explaining:

> [Harris's] early release does not mean that Harris had completed his sentence and was entitled to discharge. Rather, the credit time statutes are only applied to determine when felons are eligible for parole. While on parole, the parolee remains in legal custody because, although parole is an amelioration of punishment it is, in effect, still imprisonment.

*Id.* at 282 (internal citations to authority omitted). We further note that I.C. § 35-50-6-1(c) provides, "[a] person whose parole is revoked shall be imprisoned for all or part of the remainder of the person's fixed term."

[12] Gibbs was originally sentenced to 18,262 days imprisonment. Records reveal that he had 9632 days remaining on this sentence at the time of his parole revocation hearing in Kentucky. Therefore, the trial court did not err in concluding that he must serve the remaining 9632 days minus days served on parole and minus credit time earned since the revocation.

4.

[13] Gibbs filed a Name Declaration Notice. The nature of this document may best be gleaned from its final paragraph, which states:

> WHEREFORE, the court submit petitioner's attached Exhibits A through H, for the record, on the record, and let the record show, Petitioner as Ex Rel Washitaw Kenneth Willis Gibbs-El, is a Moorish national aboriginal, indigenous natural person, and not a nom-de-guerre, strawman [sic] or any other artificial corporate construct as written in ALL CAPITAL LETTERS, by the unclean hands of others, or for any other relief deemed just.

*Id.* at 85.  The referenced exhibits include (1) an "affidavit of fact" in which Gibbs attests that he is an "Aboriginal/Indigenous, free sovereign Moor-natural person of the land", *id.* at 86; (2) a letter from Gibbs to the US Department of Homeland Security asking to be registered as a Washitaw and Moorish Sovereign; (3) a response from the US Department of Homeland Security explaining that such was beyond its purview; (4) a document entitled "Legal Notice!  Name Declaration, Correction Proclamation and Publication" under the letterhead of Moorish Devine and National Movement of the World, *id.* at 90;  (5) a document entitled "Judicial Notice and Proclamation" declaring Gibbs to be "a Noble of the Al Moroccan Empire (North America) In Propia Persona", *id.* at 91; (6) a Kentucky UCC Financing Statement identifying "Kenneth Willis Jr." as the "collateral record owner" and "Kenneth Willis Gibbs Jr." as the debtor, with the collateral identified as "all certificates of birth document … as herein liened and claimed at a sum certain $100,000,000.00", *id.* at 100; (7) a hold-harmless and indemnity agreement between "Kenneth Willis Gibbs" and "Kenneth Willis Gibbs-El"; and (8) a "Notice of Public Records Correction" under the letterhead of the Moorish Devine and National Movement of the World, purporting to provide public notice that "the former name, Kenneth Willis Gibbs, is to be corrected on all records replace with the name, Kenneth Willis Gibbs-El.

[14]     Gibbs complains that the trial court failed to rule on his Name Declaration Notice.  Indeed, the trial court failed to mention it at all.  We have scrutinized this document and cannot find any indication that it is a request for trial court

action.  It appears to be merely what it purports to be: a declaration of Gibbs's change of names.  As such, it neither solicited nor required trial court action, and the trial court did not err in failing to act.

5.

[15] Gibbs contends the trial court erred in failing to grant his Petition for Nihil Dicit[1] Judgment, an arcane phrase describing a ruling whose modern equivalent is a default judgment.  In the petition, Gibbs noted that he had filed a petition for writ of habeas corpus seeking his release and noting that he had received no response from the prosecutor, Keith Henderson.  In his Petition for Nihil Dicit Judgment, he claimed, "[i]t's clear from the filings Mr. Gibbs represented to this court, seeking his immediate release from unlawful restraint, under his writ of habeas corpus ad subjiciendum, the [Floyd County] prosecutor Keith Henderson having filed no objection or response and acknowledging Mr. Gibbs's right to the relief requested."  *Transcript* at 110.  He requested the following relief:

> [T]he Court enter an order granting Plaintiff's Writ of Habeas Corpus Ad Subjiciendum and Judgment entered against Defendant Keith Henderson, Floyd County prosecutor, in proceeding in which he is in Court that has not filed an answer; all error or pleading being waived, court examines Petition for Writ of Habeas Corpus Ad Subjiciendum

[1] "Nihil dicit" is a Latin phrase meaning "he says nothing."  Merriam Webster's Online Dictionary, *available at* http://www.merriam-webster.com/dictionary/nihil%20dicit (last visited on March 13, 2015).

> seeking release of individual detained without process – State and determine it stated a cause of action within Court's jurisdiction to grant the requested relief.

[16] *Id.* at 111. At the hearing, the prosecutor correctly pointed out that the Floyd County Prosecutor's Office was not a proper party in matters concerning Gibbs's parole and the appropriate calculation of Gibbs's credit time. The prosecutor also pointed out that Gibbs failed to provide enough copies of some of the documents he filed and he did not follow local rules. As a result of these shortcomings, the Floyd County Prosecutor's Office was not served with several of the matters filed by Gibbs. Under these circumstances, i.e., that the Floyd County Prosecutor's Office was not a proper party in the matters Gibbs was pursuing and in any event the Floyd County Prosecutor's Office was not even served with several of the pleadings filed by Gibbs, Gibbs failed to demonstrate that he was entitled to default judgment.

6.

[17] Gibbs contends that the trial court failed to rule on his Bill of Equity. The pleading to which he refers is a seven-page, handwritten document designated by the author as a "Complaint" and entitled "Bill of Equity". *Transcript* at 113-119. The body of the document is divided into seventeen numbered paragraphs and a prayer for relief. It weaves together concepts and terminology related to the law of personal property, trust law, bailments, secured transactions, agency, and habeas corpus in such a way as to be nearly unintelligible. It culminates in Paragraph 17, which purports to summarize the nature of Gibbs's claim, as follows:

On July 11, 2013, since no one can be trustee of both the Cestui Que Vie Trust Trust ([indecipherable]) Trust and the constructive trust case # 22D01-1302-MI-000001). At the same time, the plaintiffs they did a "Bait and Switch"[.] [P]laintiffs use the Cestui Que Vie Trust to create a temporary constructive trust --- the case. The matter/case is a trust apart from, but attached to the Cestui Que Vie Trust. The bonds are added to the constructive trust, at clerk's office in Floyd County. The result under the Cestui Que Vie Trust/constructive trust wherever the circumstances of this transaction were such that Mr. Gibbs-El who takes the legal estate in property (personal property his body) cannot also enjoy the beneficial interest (liberty without liability) without necessarily violating the constructive trust by switching Mr. Gibbs-El's role --- from beneficiary to trustee, because no party can be both. At the same time, i.e. within the same constructive trust case #22D01-1302-MI-000001), some established principle or equity cannot be both beneficiary & trustee over the same constructive trust case, so the Floyd County Superior No. 1 Vicki Carmichael, Judge, immediately raise a constructive trust and fasten it upon the conscience of Mr. Gibbs-El the legal title owner, so as "to convert Mr. Gibbs-El into a fiduciary trustee" (responsible for the liability and accounting for the trust) for the plaintiffs (parties) who in equity are entitled to the beneficial enjoyment.

*Id.* at 117-19. The relief he sought was set out in his prayer for relief as follows:

PRAYER FOR RELIEF, the third-party intervention Mr. Gibbs-El request that his "Bill of Equity" is granted for the relief he seeks. Order a judgment to entitle him to claim his body and that he recover possession of the trust personal property (body/Mr. Gibbs-El held as property constructive trust case #22D01-1302-MI-000001) [.] So Mr. Gibbs-El now claimed his body (personal property) so he is collapsing the Cestui Que Vie Trust which the plaintiffs have charged, as there is now no "value" in it! The case is now dismissed and Mr. Gibbs-El is to be immediately discharged from incarceration under constructive case #22D01-1302-MI-000001.

*Id.* at 119.

[18] As best we can tell, Gibbs's Bill of Equity is the functional equivalent of a petition for writ of habeas corpus, whereby Gibbs sought release utilizing a novel amalgam of trust and property law, the gist of which frankly escapes us. The law recognizes no grounds for release of a prisoner premised upon principles of personal property law, trust law, bailments, and the like. Thus, on the stated grounds, the Bill of Equity is entirely devoid of merit. Viewed as a petition for writ of habeas corpus, it has no more merit than the petition denominated as such that Gibbs filed and which we have already determined was properly denied.

[19] Judgment affirmed.

Baker, J., and Najam, J., concur.