Pursuant to Ind.Appellate Rule 65(D),
this Memorandum Decision shall not be
regarded as precedent or cited before
any court except for the purpose of
establishing the defense of res judicata,
collateral estoppel, or the law of the
case.

APPELLANT PRO SE:

**JAMES ESKRIDGE**
New Castle, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**GEORGE P. SHERMAN**
Deputy Attorney General
Indianapolis, Indiana



FILED

Feb 25 2013, 9:29 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

JAMES ESKRIDGE,                    )
                                   )
    Appellant-Defendant,           )
                                   )
        vs.                     )    No. 49A05-1111-PC-629
                                   )
STATE OF INDIANA,                  )
                                   )
    Appellee-Plaintiff.            )

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Grant W. Hawkins, Judge
The Honorable Christina R. Klineman, Master Commissioner
Cause No. 49G05-9701-CF-15475

**February 25, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BROWN, Judge**

James Eskridge, *pro se*, appeals the post-conviction court's denial of his petition for post-conviction relief, which challenged the revocation of his parole.[1] Eskridge raises three issues which we consolidate and restate as whether the court erred in denying his petition for post-conviction relief. We affirm.

FACTS & PROCEDURAL HISTORY

The relevant facts as discussed in Eskridge's direct appeal follow:

> On January 5, 1997, [R.B.], Brian Mitchell and Eskridge were inmates in cell block 2-I at the Marion County Jail. Early that morning, [R.B.] ate breakfast and then climbed in a top bunk bed to sleep. At some point, [R.B.] woke up and there was a towel around his mouth. [R.B.] saw Eskridge standing on his right side holding his arms and Mitchell behind him with his pants down. Mitchell hit [R.B.] on the back and told him to "Take it like a bitch." Next, [R.B.] felt a sharp pain in his rectum which lasted for approximately five minutes. The object that penetrated [R.B.]'s rectum felt like "skin," not an inanimate object. [R.B.] also felt punches to his body. He tried to resist but could not because his arms were being held down. [R.B.] was unable to scream because of the towel around his face. When the pain stopped, Mitchell told [R.B.] if he told anyone about the incident he would kill him. [R.B.] eventually told a corrections officer who then transported him to the hospital.

> When [R.B.] arrived at the hospital, he told the nurse that he had been assaulted. Dr. Jason Zelenka, the physician who examined [R.B.], observed bruising around [R.B.]'s left eye and large bruises on his left leg. The rectal examination performed by Dr. Zelenka revealed no external trauma, i.e., no scrapes, abrasions or bleeding. Nor was semen detected during the examination. [R.B.] was withdrawn and quiet throughout the physical examination.

> On January 8, 1997, Detective Steven Summers interviewed [R.B.], and [R.B.] identified Eskridge and Mitchell in a photo line-up as the inmates who had sexually assaulted him. Detective Summers took photos of [R.B.] during the interview, and those photos revealed bruises on [R.B.]'s left leg, left eye, upper right arm and lower right buttock.

---

[1] Eskridge refers to himself in his brief as "Eskridge-El." Appellant's Brief at 2.

[R.B.] was then transferred out of cell block 2-I. [R.B.] later encountered Eskridge in an elevator, and Eskridge asked [R.B.] why he had "snitched" on him and Mitchell.

Eskridge v. State, No. 49A02-9803-CR-288, slip op. at 2-3 (Ind. Ct. App. October 20, 1998) (footnotes omitted). After a jury trial, Eskridge was convicted of criminal deviate conduct as a class B felony. Id. at 2. The court sentenced Eskridge to twenty years. Id. On direct appeal, Eskridge argued that the evidence was insufficient and that the court abused its discretion when it admitted evidence of a prior incident between Eskridge and the victim. Id. This court affirmed. Id.

On February 20, 2002, Eskridge filed a petition for post-conviction relief.[2] The post-conviction court denied Eskridge's petition. On appeal, this court affirmed the post-conviction court.

On March 11, 2008, Eskridge was released to parole, but he was returned to the Department of Correction as a violator on July 18, 2008. On August 14, 2008, Eskridge's parole was revoked at a revocation hearing. On January 15, 2009, the Indiana Parole Board (the "Board") decided to grant Eskridge release to parole, and Eskridge was released to parole on or about February 24, 2009. Eskridge signed a conditional parole release agreement dated February 23, 2009, which included the following provisions:

> 4.     OWNING, LEASING, AND OPERATING MOTOR VEHICLES
>
> * * * * *
>
> b)     I agree to consult with my supervising officer and receive his written permission prior to purchasing or leasing a motor vehicle. Permission to own, lease, or operate a motor vehicle

---

[2] The record does not contain a copy of this petition.

3

is granted with the understanding that I shall comply with all state laws, local ordinances, and regulations of the Bureau of Motor Vehicles pertaining to ownership, financial responsibility, and the operation of motor vehicles.

\* \* \* \* \*

10      COMMUNICATION AND SPECIAL INSTRUCTIONS – I agree to report to my supervising officer as instructed and to respond to any and all communications from any authorized employee of the Department of Correction. I will abide by any special conditions imposed by the Indiana Parole Board which have been reduced to writing and included as a condition of my parole.

\* \* \* \* \*

PAROLE STIPULATIONS FOR SEX OFFENDERS

\* \* \* \* \*

1.      You shall enroll in, actively participate in and successfully complete an approved sex offender treatment program. You must maintain steady progress toward all treatment goals and may not change treatment providers without prior approval of your parole agent. Prompt payment of any fees is your responsibility.

\* \* \* \* \*

5.      You must not reside, visit or be within one thousand (1,000) feet of public parks with playgrounds, pools, rides, and/or nature trials; schools, day care centers, public swimming pools, public beaches, theaters, or any other place where children can reasonably be expected to congregate.

\* \* \* \* \*

17.     You shall not stay overnight with any adult and/or establish an intimate and/or sexual relationship with any adult without prior approval by your parole agent and treatment clinician. You must also report whether the person you are having a relationship with has children under the age of eighteen (18) and/or if children under the age of eighteen (18) reside in the person's home.

4

Exhibit D.

In late August 2009, Agent Arthur Torrance of the Indianapolis Parole District filed a report which alleged that Eskridge violated provision 4(b) regarding the use of a vehicle and provisions 10-1, 10-5, and 10-17.[3] In a report dated August 27, 2009, the Board ordered Eskridge to return immediately and scheduled a parole revocation hearing within sixty days of August 27, 2009.[4] Agent Torrance explained to Eskridge that he had the right to have a preliminary hearing to "let him know the allegations that he was being faced with at that time, let him know he had the right to speak on his own behalf . . . ." Transcript at 17. Initially, Eskridge indicated that he wanted to have a hearing, but after interacting with Agent Green, Eskridge indicated that he wanted to sign the waiver. On August 27, 2009, Eskridge signed a waiver of Preliminary Hearing form which stated: "I plead guilty to the following alleged technical parole violations: Rule #4 Driving without/suspended license, stipulation #1 failure to attend treatment[,] stipulation #5 being within 1000 feet of a school, stipulation #17 being in a[n] unapproved sexual relationship and waive my right to a preliminary hearing." Exhibit Q. This form was also signed by Agent Torrance as a witness.

On September 23, 2009, Eskridge signed a form titled "Notification of Parole Violation Hearing" which indicated that his parole violation hearing had been scheduled for September 29, 2009. Exhibit G. On September 29, 2009, a parole revocation hearing

---

[3] The report is dated August 28, 2009.

[4] The form is dated August 27, 2009, and is file stamped "Received" August 31, 2009. Exhibit E.

was held. At the beginning of the hearing, a member of the Board asked whether Eskridge had received a notice of the hearing and whether he was ready to proceed, and Eskridge answered affirmatively to each question. The Board then read the alleged violations and referenced the fact that Eskridge had signed the waiver form. Eskridge stated that he was told "just to sign" the waiver form and that signing the form would "get [him] out of county jail and back here in front of you all quicker." Exhibit L. When a member of the Board questioned Eskridge regarding the fact that he had initialed the part of the form which stated "I plead guilty to the following alleged technical parole violations," Eskridge stated that he did not understand the form. Id. A member of the board then indicated that he would read the allegations and take Eskridge's pleas "such as they would have done on a preliminary hearing." Id. Eskridge pled not guilty to violating Rules 4(b), 10-1, and 10-17, pled guilty to Rule 10-5, and testified regarding the alleged violations. The Board acknowledged the presence of Eskridge's visitors but told Eskridge that it does not take public testimony on hearing days. At the end of the hearing, Eskridge asked the members of the Board whether they had received letters of recommendation. A member of the Board stated that it did not receive driver's license information and that it did not have a letter from Foundry Services. The Board found Eskridge guilty of violating Rules 4(b), 10-5, and 10-17, not guilty of violating Rule 10-1, and ordered that Eskridge be assessed the balance of his sentence and scheduled his next parole appearance for October 2010.

On May 24, 2010, this court authorized Eskridge to file a petition for post-conviction relief and on September 15, 2010, Eskridge did so. Eskridge alleged that the

6

Board denied him due process by denying him the right to present testimony and evidence. Eskridge also alleged that the "[p]reliminary hearing was waived with the misrepresentation by the said parole officer who was in fact filing the violation on the petitioner." Appellant's Appendix at 92. Eskridge also alleged that the "facts supporting the violation were fabricated in nature, and restrictions did not reasonably relate to [him]." Id.

On March 9, 2011, the court held an evidentiary hearing. On October 13, 2011, the court denied Eskridge's petition. The court's order states:

<u>Findings of Fact</u>

\* \* \* \* \*

2. A parole revocation hearing was held on September 29, 2009.

3. [Eskridge] was present at the hearing. [Eskridge] was accompanied by his mother, brother and two sisters who were present but were not allowed to testify.

4. [Eskridge] waived his right to a preliminary hearing but later asserted that he did not wish to plead guilty as indicated by the waiver.

5. The allegations were reread to Mr. Eskridge at which time Mr. Eskridge pled guilty to violating Rule 10-5 and not guilty to the remaining three allegations.

6. Mr. Eskridge informed the Board that he was ready to proceed with the hearing and willingly answered the Board's questions.

7. The Board deliberated and unanimously found Eskridge guilty of violating Rules 4, 10-5, and 10-17 and not guilty of violating Rule 10-1. The Board imposed the balance of his time and set another parole hearing for October 2010 (Exhibits L, M, N and O).

8. [Eskridge], on May 18, 2010, was granted permission by the Indiana Supreme Court [sic] to file a successive Petition for Post-Conviction

Relief on the sole issue of whether or not the Indiana Parole Board erroneously revoked his parole.

9.  On January 24, 2011, [Eskridge] moved to amend his Petition to conform with the higher Court's ruling and made the following claims for relief which the court summarizes as follows: 1) Denial of due process rights for failing to allow parolee to present evidence and testimony at his hearing; 2) Improper waiver of his Initial Hearing rights; and 3a) The facts supporting the violation of the "1000 foot" rule were fabricated; and 3b) The "1000 foot" rule is not reasonably related to the offense for which [Eskridge] was on parole.

10. On March 9, 2011, an Evidentiary Hearing was held. At the hearing, Exhibits A through Q were admitted as evidence. This included documentation regarding the signed Parole Release Agreement, the report and investigation of the Parole Board as to violations and their findings, as well as letters sent on Mr. Eskridge's behalf to the Parole Board.

11. Agent Torrance testified at the Evidentiary Hearing that he conducted the investigation and filed the parole violations against Mr. Eskridge. He testified that he advised Mr. Eskridge of his rights and at first Mr. Eskridge did not want to sign the waiver of his preliminary hearing. After talking to another Parole Officer, he signed it. [Tr. 17-20.].[5]

12. Randall Gentry was a member of the Parole Board that ultimately found [Eskridge] in violation of his parole. He testified at the Evidentiary Hearing that Mr. Eskridge informed the Board that he did not understand the waiver form and did not intend to plead guilty to the Rule violations. He was then allowed to withdraw his former plea and "enter a new plea of guilty or not guilty". [Tr. 33]. Mr. Eskridge at that time pled not guilty to violating Rules 4, 10-1 and 10-17 and guilty to violating Rule 10-5.

13. Exhibit [L], a video of the Parole Board hearing was admitted into evidence. The court reviewed the tape and finds the following:

    Following his plea, Eskridge testified, as to Rule 4, that he knew he had not paid some tickets for two seat belt violations and a loud muffler, but he did not know his license had been suspended.

---

[5] Bracketed citations to transcript appear in original.

To demonstrate that he did not know of his license suspension, he sent the Board his BMV records. The records showed his license was suspended a very short time. The records were not received by the Board before the hearing.

Testifying as to the violation of Rule 10-5 – which he admitted at the start of the hearing – he stated that he had originally been living with his sister in an approved home on Cornelius Avenue, but at some point a sewer line broke and they were forced to evacuate while the problem was repaired. Eskridge testified that he had previously considered entering into a relationship with Nina Mayes, a friend of his, and had called her to see if he could stay with her. Eskridge spent time at her residence and advised his Parole Officer. The Parole Officer later notified Eskridge that there was a school 900 feet from Mayes' home and he could not live with her. Eskridge testified that he moved out.

Regarding Rule 10-17, Eskridge gave testimony that he had entertained the idea of dating Ms. Mayes, but after reflection and conversation with Ms. Mayes regarding his obligations as a parolee, he decided not to pursue a relationship with her.

Eskridge also offered testimony about his involvement in Sex Offender treatment (related to Rule 10-1). (The Board found in his favor on this allegation.)

The Board noted that they do not take public testimony on the day of a hearing, but acknowledged that Mr. Eskridge had family members present on his behalf.

### Conclusions of Law

14. Indiana Codes §11-13-3-8 through §11-13-3-10 codify the protections afforded a parolee throughout the parole revocation process. Although not entitled to the full panoply of due process rights afforded to a defendant in a criminal proceeding, a parolee is afforded the right to be heard, in person, by a 'neutral and detached' Parole Board and to present evidence on his own behalf. *See Piper v. State*, 770 N.E.2d 880 (Ind. Ct. App. 2002)[, trans. denied,] and *Harris v. State*, 836 N.E.2d 267 (Ind. Ct. App. 2005)[, trans. denied].

### Waiver of Preliminary Hearing

9

19.[6] [Eskridge's] assertion, even if true, that he misunderstood what he was signing and believed that by signing the waiver he would "get in front of the Parole Board" faster, is irrelevant, given that at the hearing [Eskridge] was permitted to withdraw the waiver and any pleas he had made to Agent Torrance and start over.

20. Once the waiver and pleas were withdrawn, a member of the Parole Board reread each allegation against him and allowed him to enter new pleas of guilty or not guilty. He then indicated that he was prepared to go forward with the hearing.

21. [Eskridge] has not shown how he was prejudiced given that he was permitted to withdraw his waiver and plea and was afforded a hearing for which he was prepared. This claim fails.

### Denial of Due Process Rights to Present Testimony and Evidence at the Parole Violation Hearing

22. [Eskridge's] main claim on this issue is that the court did not receive and consider letters sent to them by Nina Mayes and his employer as well as copies of his driving records from the Bureau of Motor Vehicles.

23. The letter from Ms. Mayes was stamped received on September 28, 2009, the day of the hearing (State's Exhibit I). The letter from his employer, Michael Weir, was stamped received on September 17, 2009 (State's Exhibit J), eleven days before his hearing.

24. Although it is unclear whether the members of the Parole Board read these letters, it would have been inconsequential to the Board's hearing on the violations as both letters spoke only to leniency, character and employment verification, and not to the violations themselves. ([Eskridge] did not raise . . . the issue of whether or not the Parole Board could find him in violation of his release conditions and yet require that he serve less than the entire remaining sentence. Therefore, the issues of lenience, character and employment are of no moment.) As such these claims fail.

25. As to the BMV records, again, these speak more to character than to the violation alleged. [Eskridge's] main purpose for producing these documents was to show the Board that despite being aware of unpaid

---

[6] The court's order does not contain paragraphs numbered 15-18.

10

tickets he was not aware that his failure to pay for these tickets had resulted in a license suspension. Unfortunately, the fact that he was unaware of the suspension is immaterial. The suspension, justified by BMV rules, is enough to find [Eskridge] in violation of his parole.

26. Although the BMV records showing that the suspension was so close in time that he may have been unaware of it could have been beneficial in mitigation, [Eskridge] was still able to present evidence, by way of his own testimony, that he was unaware of the suspension. As such, this claim fails.

   The facts supporting the violation were fabricated in nature, and the intended restrictions did not reasonably relate to [Eskridge]

27. The Court infers from the testimony and argument that [Eskridge's] claim here is in relation to the allegation that he violated Rule 10-5; the "1000 foot rule".

28. The Court in a Post Conviction Relief Hearing is not in a position to reweigh the evidence brought before the Parole Board.

29. The Indiana Parole Board has broad authority to impose additional conditions beyond those standard conditions for a parolee as long as the conditions are reasonably related to the parolee's successful integration into the community and not unduly restrictive of a fundamental right. I.C. §11-13-3-4; *see Harris v. State*, 836 N.E.2d at 273.

30. [Eskridge] was convicted of committing Class B Felony Criminal Deviate Conduct against a sleeping, defenseless victim. In light of the particular circumstances of his offense, controls on [Eskridge's] living restrictions could be seen as reasonably related to his successful integration into the community. *See Weiss v. Indiana Parole Board*, 838 N.E.2d 1048 (Ind. Ct. App. 2005) (noting that although Defendant was not convicted of a sex offense, the special sex offender stipulations were reasonably related to his integration into the community)[, trans. denied].

31. Even if the court were to agree that this condition was not reasonable or necessary, the Parole Board found two unrelated violations which alone are enough to violate the terms of his parole. This claim also fails.

11

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED by the Court that the State's Motion for Summary Disposition is DENIED.

The Court further orders the Petition for Post-Conviction Relief is hereby DENIED.

Appellant's Appendix at 98-105 (footnotes omitted).

ISSUE / STANDARD OF REVIEW

The issue is whether the court erred in denying Eskridge's petition for post-conviction relief. Before discussing Eskridge's allegations of error, we note that although Eskridge is proceeding *pro se*, such litigants are held to the same standard as trained counsel and are required to follow procedural rules. Evans v. State, 809 N.E.2d 338, 344 (Ind. Ct. App. 2004), trans. denied. We also note the general standard under which we review a post-conviction court's denial of a petition for post-conviction relief. The petitioner in a post-conviction proceeding bears the burden of establishing grounds for relief by a preponderance of the evidence. Fisher v. State, 810 N.E.2d 674, 679 (Ind. 2004); Ind. Post-Conviction Rule 1(5). When appealing from the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment. Fisher, 810 N.E.2d at 679. On review, we will not reverse the judgment unless the evidence as a whole unerringly and unmistakably leads to a conclusion opposite that reached by the post-conviction court. Id. Further, the post-conviction court in this case entered findings of fact and conclusions thereon in accordance with Indiana Post-Conviction Rule 1(6). Id. "A post-conviction court's findings and judgment will be reversed only upon a showing of clear error – that which leaves us with a definite and firm conviction that a mistake has been made." Id. In this review, we accept findings of

12

fact unless clearly erroneous, but we accord no deference to conclusions of law. Id. The post-conviction court is the sole judge of the weight of the evidence and the credibility of witnesses. Id.

ANALYSIS

As a general rule, defendants facing potential parole revocation are entitled to a number of procedural due process rights, which include: written notice of the parole violation charges; disclosure of the evidence against the parolee; an opportunity to be heard in person and to present evidence; the right to confront and cross-examine adverse witnesses; a "neutral and detached" parole hearing board; and a written statement by the board of the evidence relied upon and the reasons for revoking parole. Harris v. State, 836 N.E.2d 267, 280 (Ind. Ct. App. 2005) (citing Morrissey v. Brewer, 408 U.S. 471, 489, 92 S. Ct. 2593, 2604 (1972)), trans. denied. Parolees also are entitled to a two-stage revocation procedure: (1) a preliminary hearing to determine whether there is probable cause to believe that the parolee has committed acts that would constitute a violation of parole conditions; and (2) a final revocation hearing prior to the final decision on revocation to consider whether the facts as determined warrant revocation. Id. "By and large, these constitutional requirements have been embodied in the Indiana Code." Komyatti v. State, 931 N.E.2d 411, 416 (Ind. Ct. App. 2010).

Due process is flexible and calls for such procedural protections as the particular situation demands. Morrissey, 408 U.S. at 481, 92 S. Ct. at 2600. "Where the purpose and intent of a statutory mandate are satisfied, this court will not reverse for mere technical procedural errors unless the defendant can show that he was harmed or

13

prejudiced by such errors." Id. (quoting Kindred v. State, 173 Ind. App. 624, 629, 365 N.E.2d 776, 779 (1977)).

Eskridge appears to raise arguments related to: (A) his waiver of a preliminary hearing; and (B) whether certain evidence was considered at the parole revocation hearing.[7]

A.    Waiver

Eskridge appears to argue that the post-conviction court erred in "failing to rule on the assertion that the preliminary hearing waiver was defective therefore invalid." Appellant's Brief at 8. He argues that agent Torrance was his supervising agent and "also the lone officer that conducts the interview with the parolee," and who arrested him and forced him to sign his rights waiving his preliminary hearing." Id. at 8-9. Eskridge appears to argue that he at no time indicated that he was prepared to go forward with the hearing. He asserts that "[t]he obvious prejudice would be the denial of the parole context report explaining the violation to the petitioner due to the illegal waiver." Id. at 10. Without citation to the record other than to the waiver itself, Eskridge argues that the waiver document was blank at the time that he signed it. He contends that Agent Torrance signed the waiver of preliminary hearing as a witness in violation of Ind. Code § 11-13-3-9(a), and that the charges should have been dismissed pursuant to Ind. Code § 11-13-3-9(b) and (e). Eskridge argues that the agent in charge of the petitioner is not

---

[7] To the extent that Eskridge raises additional issues, he fails to develop a cogent argument and cite to authority. Consequently, the issues are waived. See Cooper v. State, 854 N.E.2d 831, 834 n.1 (Ind. 2006) (holding that the defendant's contention was waived because it was "supported neither by cogent argument nor citation to authority"); Shane v. State, 716 N.E.2d 391, 398 n.3 (Ind. 1999) (holding that the defendant waived argument on appeal by failing to develop a cogent argument).

allowed to be involved in any part of the process of the preliminary hearing. He also states, without citation to the record, that he was "placed under arrest and taken to a van in the hot sun to wait for Agent Torrance to reappear and badger the petitioner into signing the waiver."[8] Id. at 19.

The State argues that neither Ind. Code § 11-13-3-9 nor Morrissey states that the employee who performed the arrest may not be a witness to a parolee's waiver of a preliminary hearing. The State maintains that even assuming there was a deficiency in Eskridge's waiver, he has not established that the post-conviction court erred in denying him relief because Eskridge was permitted to withdraw the waiver at the hearing before the Board and then pled guilty to violating Rule 10-5.

With respect to a preliminary hearing, the United States Supreme Court has held that "due process requires that after the arrest, the determination that reasonable ground exists for revocation of parole should be made by someone not directly involved in the case." Morrissey, 408 U.S. at 485, 92 S. Ct. at 2602. The Court also concluded that "there should be an uninvolved person to make this preliminary evaluation of the basis for believing the conditions of parole have been violated." Id. at 486, 92 S. Ct. at 2602.

---

[8] The record reveals the following exchange during the cross-examination of Agent Torrance:

Q       . . . Did he initially agree to sign a waiver?

A       Initially he did not, initially he said that he wanted to have a hearing and he wouldn't sign it. This is when we were in the hallway of the parole office. He walked out, he was taken out by two other agents into a van, um, I stayed in the building for a second, I walked back out, by the time I got to the van I was informed that he now he wanted to waive his rights to a preliminary hearing and at that time he was uncuffed and he was given the form which he signed and initialed.

Transcript at 18.

15

Specifically, the Court held that "[i]t will be sufficient . . . in the parole revocation context, if an evaluation of whether reasonable cause exists to believe that conditions of parole have been violated is made by someone such as a parole officer other than the one who has made the report of parole violations or has recommended revocation." Id. at 486, 92 S. Ct. at 2603.

Ind. Code § 11-13-3-9 provides:

(a)     Upon the arrest and confinement of a parolee for an alleged violation of a condition to remaining on parole, an employee of the department (other than the employee who reported or investigated the alleged violation or who recommended revocation) shall hold a preliminary hearing to determine whether there is probable cause to believe a violation of a condition has occurred.  The hearing shall be held without unneccessary delay.  In connection with the hearing, the parolee is entitled to:

(1)     appear and speak in his own behalf;

(2)     call witnesses and present evidence;

(3)     confront and cross-examine witnesses, unless the person conducting the hearing finds that to do so would subject the witness to a substantial risk of harm; and

(4)     a written statement of the findings of fact and the evidence relied upon.

(b)     If it is determined there is not probable cause to believe the parolee violated a condition to remaining on parole, the charge shall be dismissed.

(c)     If it is determined from the evidence presented that there is probable cause to believe the parolee violated a condition to remaining on parole, confinement of the parolee may be continued pending a parole revocation hearing.

(d)     If the alleged violation of parole is the parolee's conviction of a crime while on parole, the preliminary hearing required by this section need not be held.

(e)     Unless good cause for the delay is established in the record of the proceeding, the parole revocation charge shall be dismissed if the preliminary hearing is not held within ten (10) days after the arrest.

(f)     A parolee may waive his right to a preliminary hearing.

We observe that neither <u>Morrissey</u> nor Ind. Code § 11-13-3-9 explicitly prohibits an employee that filed a report alleging a parole violation from signing a waiver of preliminary hearing form as a witness.  Further, at the post-conviction hearing, Agent Torrance testified that Eskridge interacted with Agent Green, and Agent Green informed Agent Torrance that Eskridge was ready to sign the form.  Eskridge signed a form that stated:

### **<u>WAIVER OF PRELIMINARY HEARING</u>**

I have read and understand the purpose of a preliminary hearing as on the Notice of Preliminary Hearing.  I understand that by waiving my right to a preliminary hearing, I am giving up the right to: appear and speak on my own behalf, call witnesses and present evidence, confront and cross examine witnesses brought against me, and to receive a written statement of the findings of fact and the evidence relied upon at the preliminary hearing. I am also giving up the right to have the presence and participation of counsel at the preliminary hearing.

\* \* \* \* \*

I have read and understand the Notice of Preliminary Hearing and the Waiver of Preliminary Hearing and the rights described therein.  My signature below verifies my knowledge and understanding and my voluntary waiver of these rights.  I have not been threatened or coerced in any manner into signing that waiver and I understand that this waiver in no way affects my rights to a final parole revocation hearing.

17

Exhibit Q. To the extent that Eskridge cites to subsections (b) and (e) of Ind. Code § 11-13-3-9, based upon the record, we conclude that Eskridge waived the right to have a preliminary hearing. See Ind. Code § 11-13-3-9(f) ("A parolee may waive his right to a preliminary hearing."). Even assuming that Eskridge's waiver was improper, we cannot say that reversal is warranted. "Failure to hold a preliminary hearing is not, by itself, reversible error." Wilson v. State, 403 N.E.2d 1104, 1105 (Ind. Ct. App. 1980). A parolee must demonstrate that he was prejudiced by such failure, and the burden of showing the prejudice falls upon the parolee. See id. The record reveals that Eskridge received notice of the parole violation hearing, and at the hearing which occurred approximately a month after the parole violation report, Eskridge indicated that he was ready to proceed. After a discussion regarding the waiver form, a member of the board indicated that he would read the allegations and take Eskridge's pleas "such as they would have done on a preliminary hearing." Exhibit L. Eskridge pled guilty to violating Rule 10-5 and testified regarding the alleged violations. To the extent that Eskridge argues that "[t]he obvious prejudice would be the denial of the parole context report explaining the violation to the petitioner due to the illegal waiver," Appellant's Brief at 10, we observe that Eskridge does not point to the parole context report and the record reveals that a member of the Board read the allegations to Eskridge at the revocation hearing. Further, the conditions that Eskridge allegedly violated were set forth on the Waiver of Preliminary Hearing form and included on the Notice of Parole Violation Hearing signed by him. Under the circumstances, we cannot say that the evidence as a

18

whole unerringly and unmistakably leads to a conclusion opposite that reached by the post-conviction court.

B.     Evidence at Parole Revocation Hearing

Eskridge argues that he had letters and witnesses present at the revocation hearing and that "[a]ll of this should have been considered. Obviously it was not." Appellant's Brief at 15. Eskridge argues that the Board denied him a sufficient opportunity to present a defense to the revocation claims and therefore violated his due process rights.

The State argues that Eskridge waived any claim regarding the exclusion of witness testimony because he did not identify the exclusion of witness testimony in his petition for post-conviction relief. The State also argues that Eskridge failed to show any prejudice from the exclusion of witness testimony. With respect to the documentary evidence, the State argues that the letter from Nina Mayes and the letter from his employer were received prior to the hearing before the Board and that it is customary for each participating member to receive a copy of such documents. The State argues that the BMV driving record actually corroborated Eskridge's violation of Rule 4(b) in that it demonstrated that his license was suspended while he was on parole. The State also contends that Eskridge was not harmed by his alleged due process violation because he pled guilty to one violation and tacitly admitted to another.

The record reveals that the letters from Eskridge's mother, Nina Mayes, and Foundry Services were stamped as being received prior to the revocation hearing. Moreover, as observed by the post-conviction court, the letters appear to relate to the issue of leniency on sentencing, and Eskridge does not appear to argue that the Board

erred by ordering that he be assessed the balance of his sentence. With respect to potential witnesses, Eskridge called only Lakisha Eskridge as a witness at the post-conviction hearing and Eskridge merely asked Lakisha, "you was willing to testify in my behalf at the hearing but was not able to," and Lakisha stated, "Yes." Transcript at 58. Under the circumstances, we cannot say that the evidence as a whole unerringly and unmistakably leads to a conclusion opposite that reached by the post-conviction court. See Jamerson v. State, 182 Ind. App. 99, 102-103, 394 N.E.2d 222, 224 (1979) (holding that even though the defendant's alleged injury is potentially of constitutional proportions, we will not reverse when counsel has failed to suggest any mitigating circumstances which the constitutional and statutory remedies were designed to advance).

For the foregoing reasons, we affirm the post-conviction court's denial of Eskridge's petition for post-conviction relief.

Affirmed.

BAILEY, J., and VAIDIK, J., concur.