## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jun 30 2015, 5:33 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Doug A. Bernacchi
Michigan City, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Ellen H. Meilaender
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Jesse E. Kaufman,

*Appellant-Petitioner,*

v.

State of Indiana,

*Appellee-Respondent.*

June 30, 2015

Court of Appeals Case No.
20A04-1406-PC-301

Appeal from the
Elkhart Superior Court

The Honorable
George W. Biddlecome, Judge

Cause No. 20D03-1308-PC-49

**Kirsch, Judge.**

[1] Jesse E. Kaufman appeals the denial of his petition for post-conviction relief, which challenged the revocation of his parole. On appeal, he raises various issues, which we consolidate and restate as, whether the post-conviction court

erred in finding that alleged procedural missteps did not require Kaufman's parole revocation to be reversed.

[2] We affirm.

## Facts and Procedural History

[3] In January 2008, Kaufman pleaded guilty to two counts of sexual misconduct with a minor,[1] each as a Class C felony, and was sentenced to eight years for each conviction. The sentences were ordered to be served consecutively, with the first eight years served in prison and the second eight years suspended to probation. On July 1, 2011, while still serving his sentence for Count I, Kaufman was released to supervised parole with the Indiana Parole Board ("Board").

[4] Condition 10 of the parole release agreement required Kaufman to "abide by any special conditions imposed by the [Board that] have been reduced to writing and included as a condition of [] parole." *Resp't's Ex.* A, doc 1.[2] Written stipulations were incorporated into the conditions of parole; "Stipulation 1" required Kaufman to "enroll in, actively participate in and successfully complete an approved sex offender treatment program," and

---

[1] *See* Ind. Code § 35-42-4-9(b). We note that, effective July 1, 2014, a new version of the criminal statute at issue was enacted. Because Kaufman committed his crimes prior to July 1, 2014, we will apply the statute in effect at the time he committed his crimes.

[2] Respondent's Exhibit A contains various documents, but is not consecutively paginated; therefore, we will cite to the respective documents as numbered.

prevented him from changing treatment providers "without prior approval of [his] parole agent." *Id.*, doc. 3. Kaufman enrolled in sex offender treatment through Lincoln Therapeutic Partnership ("Lincoln"), and in connection with that treatment, he signed an agreement on September 7, 2011, which provided in pertinent part, "I agree to keep all information disclosed within the course of group therapy private and confidential." *Id.*, doc. 5 at 3.

[5] On July 3, 2013, Kaufman attended a sex offender therapy group and tape recorded, or at least attempted to tape record, the therapy session. Another group member told the therapist, Susan Young ("Young"), that Kaufman had been recording the session. When Young and Melanie Gooden ("Gooden"), Kaufman's probation officer, confronted Kaufman after the session, he admitted to having recorded the session, but said that he had deleted the contents of the tape.[3] On July 9, 2013, Kaufman was administratively discharged from Lincoln's sex offender therapy group, for having taped the session. A parole violation report was filed against Kaufman, and a "Warrant for Retaking Offender" was issued on July 19, 2013. *Resp't's Ex.* A, doc. 5 & 6. Kaufman was arrested for violating his parole.

[6] Kaufman's notice of preliminary hearing alleged that his "termination of treatment" constituted a parole violation under Condition 10, Stipulation 1.

---

[3] During the final parole revocation hearing, Kaufman alleged that, although he had attempted to secretly tape record the session, he had pressed the wrong button on the tape recorder and, therefore, had not taped the group therapy session.

*Id.*, doc. 7. The notice of preliminary hearing also stated, "Should you desire the presence and participation of legal counsel or another representative to assist you, you will have to provide your own legal counsel or other representative at your expense." *Id.*

[7] Kaufman's attorney, Doug Bernacchi, attended the August 1, 2013, preliminary hearing for Kaufman's parole revocation. Michael McComas ("McComas") was the presiding hearing officer for the meeting and prepared minutes of the meeting. Those minutes reflected that Kaufman provided conflicting accounts regarding his reason for taping or attempting to tape the sex offender group therapy session. He originally said that he was advised by his pastor, David Garty ("Garty"), to tape the group session to ensure that no one took action against Kaufman in retaliation for a police investigation of Lincoln that had been initiated by Garty. Later, Kaufman denied that Garty suggested that he tape the session; instead, Kaufman said he taped the session because he "believed he was under investigation and wanted to have evidence to counter unjust accusations against him." Id., doc. 9 at 3. In both scenarios, however, Kaufman conceded that he taped or attempted to tape the offender therapy session.

[8] As part of the same preliminary hearing, Elkhart County Police Detective Ray Caples ("Detective Caples") stated that, although he "was investigating alleged financial impropriety of Lincoln," he neither made nor directed anybody else to make a recording of any group session at Lincoln. *Id.* at 3-4. Kaufman admitted that he did not have a court order to tape the group therapy meeting.

*Id*. at 3. The hearing minutes reveal that Young, Gooden, and Klorissa Moody ("Moody"), Kaufman's parole supervisor, each reported that Kaufman said he had taped his sex offender group session. *Id*. at 4. When asked, Kaufman agreed that he was terminated from treatment. *Id*. at 3. Hearing Officer McComas found probable cause that Kaufman "violated his stipulation to attend and successfully complete his sex offender treatment program because [he] was terminated from his treatment program." *Id*. The hearing officer recommended that the Board revoke Kaufman's parole. *Id*. Following a final hearing before the Board in September 2013, the Board revoked his parole.

[9] Kaufman, by counsel, filed his petition for post-conviction relief ("PCR"), which was later amended in November 2013. Judge Biddlecome presided at the PCR hearing, during which Kaufman claimed that revocation of parole violated his state and federal constitutional rights because (1) the trial court had not sentenced him to parole, therefore, Kaufman should not have been on supervised parole,[4] (2) he was denied his right to counsel at the final parole revocation proceeding before the Board, and (3) there was insufficient evidence that he violated a condition of parole. In particular, there was no evidence that he violated HIPAA laws. *PCR Tr*. at 9.

---

[4] Kaufman also contends that it was improper to require as a condition of parole that he stay away from his own child, when no determination had been made that he was a threat to his child. Because Kaufman's parole was not revoked on the basis of this condition, we do not address its validity.

[10]   Detective Caples, Pastor Garty, therapist Young, and Kaufman each testified at the PCR hearing regarding the circumstances surrounding Kaufman's taping of the group session. Repeating information previously obtained by Hearing Officer McComas, Garty testified that he had contacted Detective Caples regarding whether fees being charged by Lincoln to non-offending persons ("NOP") were appropriate. *PCR Tr.* at 17-21. Detective Caples testified that he met with Garty and agreed to attend one of the NOP meetings to investigate the appropriateness of the fees. *Id.* at 23-24. Detective Caples further testified that he never asked, directed, or suggested that Kaufman tape a group therapy session. *Id.* at 28.

[11]   Young testified that Kaufman taped a therapy session of sex offender therapy; Young did not have a copy of those tapes nor had she ever listened to them. *Id.* at 34. Young also testified that Kaufman told her that he deleted the contents of the tape. *Id.* at 35. Young stated that Kaufman signed a treatment agreement, which provided for the protection of the privacy of other clients. The pertinent provision provided that Kaufman would "keep all of the information disclosed within the course of group therapy private & confidential." *Resp't's Ex.* A, doc. 5. Finally, Kaufman testified that he did not violate anyone's privacy by revealing anything that took place within a meeting, but admitted that he did bring a tape recorder into the sex offender therapy session. *Id.* at 51.

[12]   Prior to a ruling by the PCR court, Kaufman filed a petition for a change of judge on the basis of bias; Kaufman cited to a comment made by Judge

Biddlecome during the PCR hearing. Judge Biddlecome denied Kaufman's petition for change of judge. On August 21, 2014, Judge Biddlecome also denied Kaufman's petition for post-conviction relief. Kaufman now appeals the denial of his petition for post-conviction relief.

## Discussion and Decision

[13] Kaufman contends that his parole was unlawfully revoked due to both procedural missteps and because his right to due process was violated. Specifically, he contends: (1) he should not have been on parole in the first place; (2) he was denied the right to counsel at the final parole revocation hearing; (3) the post-conviction court improperly denied his petition for change of judge; and (4) the evidence did not support the revocation of his parole.

[14] A parolee's remedy to challenge the unlawful revocation of parole is to file a petition for post-conviction relief. *See* Ind. Post-Conviction Rule 1.1(a)(5). In a post-conviction proceeding, the petitioner bears the burden of establishing grounds for relief by a preponderance of the evidence. *Bethea v. State*, 983 N.E.2d 1134, 1138 (Ind. 2013). "When appealing the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment." *Id.* (quoting *Fisher v. State*, 810 N.E.2d 674, 679 (Ind. 2004)). "To prevail, the petitioner must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court." *Id.* "We do not defer to a post-conviction court's legal conclusions; however, [a] post-conviction court's findings and judgment will be reversed

only upon a showing of clear error – that which leaves us with a definite and firm conviction that a mistake has been made." *Id*. (citations omitted) (internal quotation marks omitted).

[15] Kaufman first contends that he should never have even been placed on parole. In 2008, after having pleaded guilty to two counts of Class C felony sexual misconduct with a minor, the trial court sentenced him to eight years in the Department of Correction on the first count and a consecutive eight years of probation on the second count. At that time, Indiana Code section 35-50-6-1(d) provided in pertinent part, "When a sex offender (as defined in IC 11-8-8-5) completes the sex offender's fixed term of imprisonment, less credit time earned with respect to that term, the sex offender shall be placed on parole for not more than ten (10) years." Indiana Code section 11-8-8-5(a)(8) defined a sex offender as someone who committed any of a number of offenses, including Class C felony sexual misconduct with a minor. Thus, Kaufman was subject to the possibility of parole.

[16] Kaufman maintains, however, that he was improperly placed on parole because the trial court had not ordered parole as part of his sentence, and he was never informed at his sentencing of the parole consequences of his plea. Our Supreme Court has held, that "'parole requirements in the statute have general application to persons imprisoned for felonies . . . .'" *Jones v. State*, 491 N.E.2d 542, 543 (Ind. 1986) (quoting *Greer v. State*, 428 N.E.2d 787, 790-91 (Ind.

1981)).[5]  There is no requirement in the law that a person entering a plea of guilty be advised as to the possible future effects the parole statutes will have upon his incarceration. *Fulmer v. State*, 519 N.E.2d 1236, 1238 (Ind. 1988). "The parole impact of a plea is neither a constitutional right nor an advisement required by statute." *Id*. Even if Kaufman was not informed at sentencing that he would be placed on parole after his release from prison, subjecting him to the statutory requirement of parole was not improper.[6]

[17]   Kaufman next contends that his right to due process was violated when he was denied the right to counsel at the final parole revocation hearing. Parolees charged with violations of parole are within the protection of the Due Process Clause of the Fourteenth Amendment. *Morrissey v. Brewer,* 408 U.S. 471, 482 (1972). As such, parolees are entitled to a two-stage parole revocation procedure: (1) a "preliminary hearing" to determine whether there is probable cause to believe that the arrested parolee has committed acts that would constitute a violation of parole conditions; and (2) a revocation hearing prior to the final decision on revocation to consider whether the facts as determined warrant revocation. *Id.* at 485-88. The minimum requirements of due process include written notice of the claimed violations of parole, disclosure to the

---

[5] While the *Greer* and *Jones* courts were addressing the question of whether a plea was knowingly and voluntarily made, we find the same rationale applies here. *Jones v. State*, 491 N.E.2d 542, 543 (Ind. 1986); *Greer v. State*, 428 N.E.2d 787, 790 (Ind. 1981).

[6] We note that, at the time Kaufman was placed on parole, there was only one alternative to parole -- continued incarceration for Count I.

parolee of the evidence against him, an opportunity to be heard in person and to present evidence, the right to confront and cross-examine adverse witnesses, a "neutral and detached" hearing body, and a written statement by the fact-finders of the evidence relied upon and the reasons for revoking parole. *Id.* at 489-90.

[18] Kaufman maintains that his right to due process was violated when his attorney of record was not notified about Kaufman's scheduled parole revocation hearing and, therefore, did not attend. We disagree. Kaufman was notified that he had the right to have counsel present at his preliminary hearing regarding parole revocation. *Resp't's Ex.* A, doc. 7. Kaufman waived his right to have a preliminary hearing; nevertheless, a hearing was conducted by Hearing Officer McComas. *Id.*, doc. 8. During that hearing, Kaufman, represented by counsel Bernacchi, gave two different versions as to why he had taped the sex offender therapy session. While neither version was an admission that he intended to reveal private information about fellow group members, Kaufman admitted that he had, indeed, taped, or at least attempted to tape, the sex offender therapy sessions. *Id.*, doc. 9 at 3. He also admitted that, because of that act, he had been terminated from his approved sex offender treatment program at Lincoln. *Id.*

[19] At the start of the final hearing before the Board, Kaufman stated that he had received notice of his scheduled parole violation hearing. A notification on "State Form 7018," signed by Kaufman on August 30, 2013, confirmed that he received the notice. *Id.*, doc. 11. Form 7018 also informed Kaufman,

> You are not entitled to be represented by legal counsel or lay advocate, although the Parole Board does not object to the presence of legal counsel to advise you. However, counsel may not directly participate in the hearing unless prior approval has been granted by the Chairman of the Parole Board.

*Id*. It was Kaufman's responsibility to inform his attorney that he wanted his attorney to advise him during the final hearing before the Board. Furthermore, the evidence presented at the final hearing before the Board was the same evidence presented at the preliminary hearing – a hearing at which Kaufman was represented by counsel. No due process violation existed because Kaufman's counsel was not notified about the final revocation hearing.

[20] Kaufman also insists that the post-conviction court's judgment must be vacated because the judge presiding over the post-conviction hearing, Judge Biddlecome, abused his discretion by denying Kaufman's petition for change of judge. The State responds that this issue is waived because Kaufman raised this issue only in the fact section of his brief. We agree with the State that Kaufman failed to include in his brief any reasoning for how statements made by Judge Biddlecome prevented Kaufman from receiving a fair hearing. That being said, because our court has expressed a preference for deciding issues on their merits when possible, we address the merits of Kaufman's claim. *City Sav. Bank v. Eby Constr., LLC*, 954 N.E.2d 459, 463 n.2 (Ind. Ct. App. 2011), *trans. denied*.

[21] Indiana Trial Rule 76 allows a party in a civil action to request a change of judge or a change of venue from the county if the party shows that he is unable to get a fair trial due to local prejudice or bias. That petition must be filed within ten days after the issues are first closed on the merits. Ind. Trial Rule

76(C). However, Trial Rule 76(C)(6) provides an exception to the ten-day deadline if the moving party first learns of the grounds for change of judge after the deadline has passed. The trial court's ruling on this issue may be reviewed only for an abuse of discretion. T.R. 76(C)(6).

[22] Following the PCR evidentiary hearing, but prior to the court's ruling, Kaufman filed a petition for change of judge, pursuant to Trial Rule 76(C)(6), on the basis that Judge Biddlecome was biased. In support of his petition, Kaufman quoted a statement made by Judge Biddlecome during the PCR evidentiary hearing – "I'd rather none of them got parole." *Appellant's App.* at 42 (quoting *PCR Tr.* at 12). Kaufman's counsel suggested that the phrase "none of them" referred to convicted sex offenders, thus making the judge biased and unable to fairly address Kaufman's PCR petition.

[23] Following a hearing on the petition for change of judge, Judge Biddlecome denied Kaufman's petition. In his order, Judge Biddlecome clarified that this statement was made in response to Kaufman's claim that his parole was improper because it had not been ordered as part of his sentence. Put in context, the language surrounding the highlighted phrase was as follows:

> I don't think I have to order him placed on parole. That's a function of the department of correction. *I'd rather none of them got parole*, but that's not the way the law works. That's a function of the department of correction, whether or not they're admitted to parole. That's – as I understand the law, that's part of the manner in which they serve their sentence at the department of correction. That's my understanding of the law. . . .

*PCR Tr.* at 12-13.

[24] A judge is presumed to be unbiased. *Dan Cristiani Excavating Co. v. Money*, 941 N.E.2d 1072, 1082 (Ind. Ct. App. 2011), *trans. dismissed*. "To overcome this presumption, the party seeking to disqualify a judge must establish actual personal bias." *Moore v. Liggins*, 685 N.E.2d 57, 63 (Ind. Ct. App. 1997). That is, a party "must show that the trial judge's action and demeanor crossed the barrier of impartiality and prejudiced the [party]'s case." *Flowers v. State*, 738 N.E.2d 1051, 1061 (Ind. 2000). In denying the petition for change of judge, the trial court commented that Kaufman "in no way establish[ed] bias or prejudice as the court clearly expressed its understanding of the law with respect to parole, and its intention to follow and enforce that law." *PCR Tr.* at 53. We agree. A ruling upon a motion for change of judge rests within the sound discretion of the trial judge and will be reversed only for an abuse of discretion. *In re Guardianship of Hickman*, 805 N.E.2d 808, 814 (Ind. Ct. App. 2004), *trans. denied*. Here, based on this one statement, which was taken out of context, Kaufman has failed to overcome the presumption that the post-conviction judge was unbiased. The post-conviction court did not abuse its discretion in denying Kaufman's petition for change of judge.

[25] Finally, Kaufman maintains that his parole was improperly revoked. Kaufman argues that, while he admitted that he had taken a tape recorder into one of his offender therapy sessions and had either taped or attempted to tape the session, he did not violate Lincoln's privacy laws because the information from the offender therapy session was never made public. Kaufman also insists that the Board failed to consider that he was gainfully employed, properly registered

with the Elkhart County Sheriff's Department on the Indiana Sex Offender Registry, and had submitted to and passed monthly screens at the Probation Department. Accordingly, Kaufman maintains that his parole was revoked without any evidence supporting the alleged violation.[7] *Appellant's Br.* at 8.

[26] "The parole board has almost absolute discretion in carrying out its duties, and it is not subject to the supervision or control of the courts." *Holleman v. State*, 27 N.E.3d 344, 346 (Ind. Ct. App. 2015), *trans. denied*. "There is no constitutional or inherent right to parole release, so our review of a decision from the parole board is limited to a determination whether the requirements of due process have been met and the parole board has acted within the scope of its powers as defined by statute." *Id*. Once the Board has fulfilled the statutory procedural requirements, "it has almost absolute discretion in making its decision." *Komyatti v. State*, 931 N.E.2d 411, 419 (Ind. Ct. App.2010) (citations omitted) (internal quotation marks omitted). We consider only the evidence most favorable to the revocation and will not reweigh the evidence or judge the credibility of the witnesses. *Id*.

[27] Here, the Board's written findings include boilerplate language stating that the Board relied on the following evidence: "Parole Release Agreement; PV Report; Initial Hearing; Preliminary Hearing Waiver; Preliminary Hearing

---

[7] In his brief, Kaufman states that "his *probation* was *violated* without any evidence supporting the alleged violation." *Appellant's Br*. at 8. Notwithstanding Kaufman's reference to his probation being violated, the context of the argument reveals that he is referring to his *parole* being *revoked*.

Minutes; New Conviction; Offender Information System; Alcohol Test Results; Drug Test Results; Plea; Other." *Resp't's Ex.* A, doc. 12 at 2. Obviously, much of this purported "evidence" did not exist in Kaufman's case. For example, there were no alcohol or drug test results and no new conviction for Kaufman.[8] However, it appears that in revoking Kaufman's parole, the Board did, in fact, rely upon the parole release agreement and the Preliminary Hearing Minutes[9] The contents of those documents include Kaufman's admission that he had taped or attempted to tape his group session, that this action was deemed in violation of Lincoln's procedure and, as a result, he was terminated from therapy. The post-conviction court found that Kaufman's termination from Lincoln, and resultant failure to complete his treatment plan, constituted a sufficient factual basis to prove that Kaufman was in violation of the conditions and stipulations of parole that required him to enroll in, actively participate in, and successfully complete an approved offender treatment program.

---

[8] In *Komyatti*, our count noted, "Indiscriminate use of this form has previously caused problems for the Board. We have reversed a parole revocation where the Board used this form, but the form failed to indicate that the Board relied on a piece of evidence that the State on appeal claimed supported the parole revocation. *See Pierce v. Martin*, 882 N.E.2d 734, 737-38 (Ind. Ct. App. 2008)." *Komyatti v. State*, 931 N.E.2d 411, 419 (Ind. Ct. App. 2010). As we did in *Komyatti*, "[W]e explicitly discourage the Board from continuing to use this boilerplate form or, if it is to be used, it must be individually tailored to each case to accurately reflect what evidence was actually presented and considered at the parole revocation hearing. Not to do so invites confusion and escalates the chance of reversal." *Id*. at 420.

[9] During the final Board hearing, Kaufman pleaded guilty to having violated HIPAA and the policies and procedures of the group. *Resp't's Ex.* B at minutes 14:00-:25. At the PCR hearing, counsel Bernacchi argued that Kaufman could not have violated HIPAA because HIPAA "is not a criminal act," but instead an "informational act" "to balance the rights of patients' privacy versus the need for legitimate use of medical records." *PCR Tr*. at 7. Here, we make no determination whether Kaufman's actions were a violation of HIPAA. Instead, we focus only on his admission to having violated the policies and procedures of Lincoln that caused him to be terminated from offender treatment.

Accordingly, the post-conviction court found no cause to reverse the revocation of Kaufman's parole. Kaufman has failed to meet his burden of proving that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. *Bethea*, 983 N.E.2d at 1138.

[28] Affirmed.

Vaidik, C.J., and Bradford, J., concur.